UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH A. MOORE,

    Plaintiff,

v.

FERRELLGAS, INC.,

    Defendant.

_____/

Case No. 1:07-CV-997

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendant Ferrellgas, Inc.'s Motion to Dismiss, or, in the Alternative, to Compel Arbitration and Stay Proceedings. Plaintiff Kenneth A. Moore has responded in opposition. Upon review of the briefing, the Court discerns no reason for oral argument. *See* W.D. Mich. LCivR. 7.2(d). After review, it is clear dismissal of Plaintiff's Complaint is appropriate.

**I. BACKGROUND**

On June 12, 1993, Plaintiff entered into an Employee Agreement, (Dkt. No. 8, Ex. 1), with Defendant.[1] In the Employee Agreement, Plaintiff agreed to, *inter alia*, arbitrate any dispute arising out of his employment relationship with Defendant. The Arbitration Agreement provides as follows:

> Any dispute (whether the dispute sounds in contract, tort, or otherwise) arising out of or relating to this Agreement or its breach, or the employment relationship of the parties, except injunctive relief to preserve the status quo, shall be fully and finally settled by binding arbitration conducted expeditiously in accordance with this paragraph, the United States Arbitration Act[2] (to the exclusion of any provisions of

---

[1]The Court uses June 12 as the operative date because Plaintiff wrote this date next to his acceptance of the Employee Agreement. (*See* Employee Agreement 2.) Defendant asserts the date was June 11. (Def.'s Br. 1.) To further complicate matters, the Employee Agreement has a "JUN 24 1993" stamp on it. (Employee Agreement 1.) Fortunately, the exact date is inconsequential.

[2]The United States Arbitration Act was amended by Congress and is now the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*

> state law inconsistent with the Act or which would produce a different result), and the Center for Public Resources Rules for Non-Administered Arbitration of Business Disputes (1989) by three independent and impartial arbitrators. Each party shall appoint one arbitrator, and the third arbitrator must be an attorney. The arbitration shall take place in the state in which the Ferrellgas location is found. Any court having jurisdiction may enter judgment upon the arbitration award. Ferrellgas reserves the right to change the arbitrator (prior to any dispute) as evidenced by written documentation of such substitution.

(Employee Agreement ¶ 20.) The Employee Agreement also contains the following sentence—which is in larger font than standard contract language, bold, and separated from standard contract language by a large bold line—in its acceptance field: "This Agreement contains a binding arbitration provision which may be enforced by the parties." (*Id.* at 2.)

Defendant terminated Plaintiff on January 11, 2007. Defendant claims the termination was based on a general reduction in workforce, while Plaintiff alleges age discrimination and disparate treatment in violation of Michigan common law and the Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* (Compl. 1.) Despite agreeing to resolve all disputes in arbitration, Plaintiff filed a Complaint against Defendant in Michigan state court. Defendant thereafter removed the action to federal court pursuant to 28 U.S.C. § 1441 and filed the present Motion to Dismiss or Compel Arbitration.

**II. LEGAL STANDARDS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal based on lack of subject-matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence

and the plaintiff bears the burden of proving that jurisdiction exists." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (citing *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)).

When responding to a facial attack, the plaintiff's burden to prove subject matter jurisdiction is not onerous. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). The plaintiff must only show that the complaint alleges a "substantial" claim under federal law. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A federal claim is "substantial" unless "prior decisions inescapably render [it] frivolous." *Transcon. Leasing, Inc. v. Michigan Nat'l Bank of Detroit*, 738 F.2d 163, 165 (6th Cir. 1984). "In short, when faced with a 12(b)(1) challenge to the face of a complaint, the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248.

A factual attack, on the other hand, does not challenge the sufficiency of the pleading's allegations. *Warren Steel Holdings, LLC v. Williams*, No. 4:07-cv-1883, 2007 WL 2688240, at *2 (N.D. Ohio Sept. 11, 2007). A factual attack challenges the court's power to hear the case. No presumption of truthfulness applies to the plaintiff's factual allegations and the plaintiff bears the burden of establishing jurisdiction. *RMI Titanium*, 78 F.3d at 1134; *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "[A] trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins.*, 922 F.2d at 325 (citations omitted). Ultimately, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.*

In this case, the Court notes Defendant's Motion "would more properly have been brought under Rule 12(b)(6), because the existence of a valid arbitration clause does not technically deprive

3

the Court of subject matter jurisdiction." *Liveware Publ'n, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 78 (D. Del. 2003); *see also Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 45 n.1 (3d Cir. 1991) ("Dismissal of a declaratory judgment action because the dispute is covered by an arbitration provision is generally effected under Rule 12(b)(6) covering dismissals for failure to state a claim upon which relief can be granted, or Rule 56 covering summary judgments if matters beyond the pleadings were considered.") (citations omitted)). An arbitration agreement "requires the Court to forego the exercise of jurisdiction in deference to the parties' contractual agreement to address in another forum those disputes which fall within the scope of the agreement to arbitrate." *Liveware Publ'n*, 252 F. Supp. 2d at 78–79.

Notwithstanding the appropriateness of a Rule 12(b)(6) motion, courts have allowed parties to receive the equivalent remedy in a Rule 12(b)(1) motion. *See, e.g., Nova CTI Caribbean v. Edwards*, No. CIV. A. 03-5319, 2004 WL 35759, at *2 (E.D. Pa. Jan. 8, 2004); *Thompson v. Nienaber*, 239 F. Supp. 2d 478, 483 (D.N.J. 2002). The Court will allow Defendant to proceed under Rule 12(b)(1). The distinction between Rule 12(b)(1) and Rule 12(b)(6) is immaterial because based on either ground, the Arbitration Agreement requires arbitration of Plaintiff's claims, as demonstrated *infra*. *Cf. Nova CTI Caribbean*, 2004 WL 35759, at *2.

Defendant does not explicitly state whether it is making a facial or factual attack on the Complaint. The Court finds that Defendant is making a factual attack because Defendant relies on matters outside the pleadings, namely, the Employee Agreement. Plaintiff neither referenced the Employee Agreement in the Complaint nor attached it to the Complaint. Accordingly, Plaintiff bears the burden of establishing jurisdiction.

**III. ANALYSIS**

The FAA was enacted in response to the hostility of American courts to enforcing arbitration agreements. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). The "jealous notion held by the common law courts of England [was] that arbitration agreements were nothing less than a drain on their own authority to settle disputes." *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 853 (S.D. Ohio 2003) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 n.6 (1985)). The FAA sought "to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citations omitted).

Section 2 of the FAA provides in pertinent part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds*, 470 U.S. at 218 (citing 9 U.S.C. §§ 3–4). Thus, only generally applicable state-law contract defenses are available to a plaintiff seeking to invalidate an arbitration agreement, such as fraud, forgery, duress, mistake, lack of consideration or mutual obligation, and unconscionability.[3]  *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *Cooper*, 367 F.3d at 498; *Fazio v. Lehman Bros.*, 340 F.3d 386, 393–94 (6th Cir. 2003).

---

[3]Moreover, the "federal policy favoring arbitration . . . is taken into consideration even in applying ordinary state law." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004) (citing *Garrett v. Hooters-Toledo*, 295 F. Supp. 2d 774, 779 (N.D. Ohio 2003)).

When construing arbitration agreements, the court presumes they are valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Arbitration agreements must be read liberally to effect their purpose. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89–91 (2000); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The court should not deny arbitration of a claim "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted). A party seeking invalidation of an arbitration agreement bears the burden of providing that the arbitration provision is invalid or does not encompass the claim at issue. *See Green Tree*, 531 U.S. at 92.

Plaintiff's arguments for the invalidation of the arbitration agreement fall into three main categories: (1) the Arbitration agreement does not comply with the FAA and Michigan law; (2) Plaintiff did not knowingly and voluntarily waive his rights to a judicial forum; and (3) the costs of asserting Plaintiff's rights in arbitration are prohibitive.

**A.  Validity of the Arbitration Agreement**

Plaintiff asserts Michigan law governs the arbitration agreement and not the FAA. (*See* Pl.'s Resp. 5–6 ("The Federal Courts must apply state law when ruling upon the validity of an arbitration contract[.]")) To demonstrate the necessary elements of a valid arbitration agreement, Plaintiff relies on *Renny v. Port Huron Hosp.*, 398 N.W.2d 327 (Mich. 1986), *Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208 (Mich. Ct. App. 1999), and *Peterson v. Art Van Futniture*, No. 233745, 2003 WL 1985262 (Mich. Ct. App. Apr. 29, 2003). Plaintiff, however, fails to consider a provision he assented to in the Employee Agreement, which states, "[t]his Agreement shall be

governed by the internal laws, and not the conflicts of law provisions, of the State of Missouri." (Employee Agreement ¶ 17.)

In a diversity action, the choice-of-law provision of the forum state should apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "The general rule in Michigan is that the parties to a transaction can specify the applicable state law that will govern disputes arising out of the contract." *Dart Energy Corp. v. Vogel*, No. 1:91-CV-184, 1991 WL 11010342, at *1 (W.D. Mich. July 18, 1991) (citing Mich. Comp. Laws § 440.1105(1)). When "a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." Mich. Comp. Laws § 440.1105(1).

Although Plaintiff has not argued the Employee Agreement's choice of Missouri law is invalid or otherwise does not apply,[4] the Court finds that even were Plaintiff to make this argument, it would be without merit. The Court will apply the law of Missouri given the terms of the agreement. When deciding an issue of state law, courts look to decisions of the state's highest court. *See Erie R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938). "Where a state's highest court has spoken to an issue, we are bound by that decision unless we are convinced that the high court would overrule it if confronted with facts similar to those before us." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 698 (6th Cir. 2006) (quoting *Kirk v. Hanes Corp. of North Carolina*, 16 F.3d 705, 707 (6th Cir. 1994)). If "the state's highest court has not decided the applicable law, then [this] court must ascertain the state law from 'all relevant data,'" including the state's intermediate courts. *Id.* (citations omitted). Other relevant data includes the state's highest court *dicta*,

---

[4]In fact, for unknown reasons, Plaintiff chose to not address this issue at all.

restatements of law, law review commentaries, and the majority rule among other states. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (citing *Angelotta v. Am. Broad. Corp.*, 820 F.2d 806, 807 (6th Cir. 1987)). In the past, this Court has also looked favorably upon the decisions of federal courts sitting in diversity. *See Phillips v. Ingham County*, 371 F. Supp. 2d 918, 929 (W.D. Mich. 2005).

      1. Federal Arbitration Law

It is undisputed that the arbitration agreement "involv[es] commerce" and is not exempt from the FAA, thus, the arbitration agreement is undoubtably within the scope of the FAA. *See* 9 U.S.C. §§ 1–2. Accordingly, the Court presumes the arbitration agreement is valid and enforceable. *McMahon*, 482 U.S. at 226. Plaintiff's age discrimination and disparate treatment claims are easily encompassed by the broad language of the arbitration agreement covering "[a]ny dispute (whether the dispute sounds in contract, tort, or otherwise) arising out of or relating to this Agreement or its breach." (Employee Agreement ¶ 20.) All of Plaintiff's factual allegations underlying his claims arise out of or relate to his employment relationship with Defendant. Plaintiff alleges he was terminated because of his age and that Defendant treated him disparately during his employment based on his age. It is, therefore, beyond question that Plaintiff's claims are encompassed by the arbitration agreement.

Although Plaintiff no doubt would prefer a judicial forum, his inhibitions concerning arbitration are misplaced. The United States Supreme Court has endorsed arbitration and explained its benefits to employment disputes:

> We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of

> particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts. . . . The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law; as we noted in *Gilmer*, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."

*Circuit City Stores*, 532 U.S. at 123 (citations omitted).

Under Missouri law, the "primary rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001) (quoting *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126, 129 (Mo. Ct. App. 1991)). Based on a review of the arbitration agreement, the intent of the parties was undoubtably to enter into a contract requiring binding arbitration in the event of a dispute arising out of the employment relationship. Although Plaintiff has alleged unconscionability—an argument the Court rejects *infra*—Plaintiff has not pled fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or any other state-law contract defense. Plaintiff has failed to meet the burden of demonstrating the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree*, 531 U.S. at 92. Pursuant to the Supremacy Clause of the United States Constitution, the Court finds the FAA governs the arbitration agreement. U.S. Const. art. VI, cl. 2.

### 2. Missouri Arbitration Law

Alternatively, even assuming state arbitration law applies to the dispute as Plaintiff argues, the arbitration agreement is still valid and enforceable. The Eight Circuit has "made clear that when reviewing an arbitration clause, we ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Faber v. Menard, Inc.*,

9

367 F.3d 1048, 1052 (8th Cir. 2004) (citing *Bailey v. Ameriquest Mortgage Co.*, 346 F.3d 821, 822 (8th Cir. 2003); *Arkcom Digital Corp. v. Xerox Corp.*, 289 F.3d 536, 537 (8th Cir. 2002)) (footnote omitted). This narrow review addresses "only such issues as are essential to defining the nature of the forum in which a dispute will be decided." *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001) (citation omitted). Review is not extended "to the consideration of public policy advantages or disadvantages resulting from the enforcement of the agreement." *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682 (8th Cir. 2001) (citation omitted). Likewise, questions concerning remedy are outside the scope of review since the validity of the agreement to arbitrate is not affected. *See Arkcom Digital*, 289 F.3d at 539.

In this case, the arbitration agreement proves to be valid and enforceable under Missouri law. As shown above, the second-prong of *Faber* is satisfied because Plaintiff's claims fall within the ambit of the arbitration agreement. *See Faber*, 367 F.3d at 1052. The arbitration agreement also is valid under the first-prong of *Faber*. Missouri law, like federal law, supports the enforcement of arbitration agreements in the context of employment discrimination. Mo. Rev. Stat. § 435.350;[5] *see also Berkley v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006). Claims based on the federal equivalent of Michigan's Elliot-Larsen Civil Rights Act—the Age Discrimination in Employment

---

[5]Missouri's statute concerning the validity of arbitration agreements, which is similar to the FAA, provides in pertinent part:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract, except contracts of insurance and contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Mo. Rev. Stat. § 435.350.

Act—have been held subject to binding arbitration. *Faber*, 367 F.3d at 1052 (citing *Gilmer*, 500 U.S. at 35); *see also Cosgrove v. Shearson Lehman Bros.*, No. 95-3432, 1997 WL 4783, at *2 (6th Cir. Jan. 6, 1997); *cf Bailey*, 346 F.3d at 824 (holding claims based on the Fair Labor Standards Act subject to arbitration); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 310–12 (6th Cir. 1991) (holding claims based on Title VII subject to arbitration). Therefore, the Court finds the arbitration agreement is valid and enforceable under the FAA and, alternatively, Missouri law.

### B. Knowing and Voluntary Waiver

Plaintiff next argues he did not knowingly and voluntarily waive his right to a judicial forum to resolve employment disputes. He alleges he had no opportunity to review the Employee Agreement at home, or with a lawyer, and "he was told that he must sign the Employee Agreement then and there without the benefit of counsel or be terminated." (Pl.'s Resp. 4.) In support of his argument, Plaintiff relies on the Sixth Circuit Court of Appeals' decision in *Walker v. Ryan's Family Steak Houses, Inc.*, which held the following factors should be evaluated when determining whether a plaintiff has knowingly and voluntarily waived the right to a judicial forum: (1) the plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the plaintiff had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver on the part of the defendant; and (5) the totality of the circumstances. 400 F.3d 370, 381 (6th Cir. 2005) (citations omitted).

"When allegations of facts not appearing of record are relied upon in support of or in opposition to any motion, all affidavits or other documents relied upon to establish such facts shall accompany the motion." W.D. Mich. LCivR 7.1(b). Plaintiff has not submitted affidavits or other documents supporting the above-referenced assertions, nor do these assertions appear in the record.

Accordingly, the Court will not consider these statements because Plaintiff has failed to comply with Local Rule 7.1(b).

Alternatively, even if the Court considered these unsubstantiated allegations, the Court would still find Plaintiff knowingly and voluntarily waived his right to a judicial forum. Plaintiff did not request extra time to consider the Employee Agreement or to contact a lawyer. Moreover, Plaintiff did not indicate to Defendant he did not understand the arbitration agreement or any portion of the Employee Agreement. Even if Plaintiff had been given the opportunity to review the Employee Agreement at home and consult with a lawyer, Plaintiff has not indicated he would have actually done so. Defendant gave due consideration to Plaintiff for agreeing to arbitration—a job. At the core, Plaintiff's arguments suggest he regrets his decision to relinquish his right to a judicial forum over fourteen years ago; however, Plaintiff knowingly and voluntarily made this decision and the Court does not seek to encourage the mentality that one can "have his cake and eat it too."

Plaintiff's assertions regarding the clarity of the arbitration agreement are void of merit. Plaintiff's argument that an arbitration agreement must contain explicit language waiving an employee's right to a jury trial is patently wrong. As the Fourth Circuit has noted, the "loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 307 (4th Cir. 2001) (citation omitted); *see also Cooper*, 367 F.3d at 506. The Seventh Amendment does not confer on individuals a right to a jury trial *per se*, but rather "only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Bank One, N.A. v. Coates*, 125 F. Supp.

2d 819, 834 (S.D. Miss. 2001), *aff'd*, 34 F. App'x 964 (5th Cir. 2002); *accord Geldermann, Inc. v. Commodity Futures Trading Comm'n*, 836 F.2d 310, 323 (7th Cir. 1987).

Finally, common sense dictates that the events surrounding Plaintiff's execution of the arbitration agreement were fair and reasonable. Plaintiff has a high school education and has held various positions at Ferrellgas, including District Manager and Operations Manager. (Pl.'s Resp. 2, 4.) The Employee Agreement is a mere three pages long and pointed out to Plaintiff—not once, but twice—that binding arbitration would govern "[a]ny dispute (whether the dispute sounds in contract, tort, or otherwise) arising out of or relating to this Agreement or its breach." (Employee Agreement 2 & ¶ 20.) As one court has noted, "[w]hen a party . . . voluntarily *agrees* to something in an attempt to obtain employment, they are not being 'forced' to do anything . . . ." *EEOC v. Frank's Nursery & Crafts, Inc.*, 966 F.Supp. 500, 504 (E.D. Mich. 1997), *rev'd on other grounds*, 177 F.3d 448 (6th Cir. 1999); *accord Williams v. Parkell Prods., Inc.*, 91 F. App'x 707, 708–09 (2d Cir. 2003) (affirming order compelling arbitration of Title VII claims and holding that an employer's threat to terminate employment if an employee does not sign an arbitration agreement does not constitute duress). Thus, the Court finds the totality of the circumstances demonstrate Plaintiff knowingly and voluntarily waived his right to a judicial forum by entering into the arbitration agreement.

### C. Prohibitive Costs

Plaintiff's final argument is that "[t]he costs of arbitration . . . would obviously expose Moore to the distinct probability that he will incur thousands of dollars of liability which he cannot afford." (Pl.'s Resp. 11.) Plaintiff argues the arbitration agreement is unconscionable because the arbitration panel may place all of the costs of arbitration on him. (*Id.*) In support of his position, Plaintiff relies

13

on the Sixth Circuit's decision in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003). As aforementioned, the law of Missouri governs this dispute, so Plaintiff's reliance on *Morrison* is misplaced since *Morrison* was not interpreting Missouri law.

The arbitration agreement is silent as to cost allocation; however, the rules of the International Institute for Conflict Prevention and Resolution ("CPR") (formerly known as the Center for Public Resources) are not. (*See* Employee Agreement ¶ 20 (stating that "binding arbitration [shall be] conducted expeditiously in accordance with . . . the Center for Public Resources Rules for Non-Administered Arbitration of Business Disputes").) Commentary to CPR Rule 16 provides that "the Tribunal may apportion the costs of arbitration between the parties 'in such manner as it deems reasonable taking into account the circumstances of the case, the conduct of the parties during the proceeding, and the result of the arbitration.'" Therefore, Plaintiff correctly notes there is a possibility the arbitrators may assess all costs against him; however, there is also a possibility all costs may be assessed against Defendant. Of course, as with many arbitrations, the arbitrators may apportion costs between the parties.

Missouri courts agree with the majority of courts that a fee-shifting provision, by itself, does not render an arbitration agreement unenforceable. *Faber*, 367 F.3d at 1053; *see also Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1259 (11th Cir. 2003); *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 607–08 (3d Cir. 2002). Fee-splitting provisions are reviewed on a case-by-case basis. *Faber*, 367 F.3d at 1053. "A fee-splitting arrangement may be unconscionable if information specific to the circumstances indicates that fees are cost-prohibitive and preclude the vindication of statutory rights in an arbitral forum." *Id.* (citing *Green Tree*, 531 U.S. at 90; *Dobbins v. Hawk's Enters.*, 198

14

F.3d 715, 717 (8th Cir. 1999)). A party seeking invalidation of an arbitration agreement due to prohibitive costs "bears the burden of showing the likelihood of incurring such costs." *EEOC v. Woodmen of World Life Ins. Soc'y*, 479 F.3d 561, 556 (8th Cir. 2007) (quoting *Green Tree*, 531 U.S. at 92). A plaintiff must show "more than just a hypothetical inability to pay . . . to overcome the federal policy favoring arbitration." *Faber*, 367 F.3d at 1053 (citation omitted). "The party seeking to avoid arbitration should present specific evidence of likely arbitrators' fees and its financial ability to pay those fees so that the court can determine whether the arbitral forum is accessible to the party." *Id.* at 1054.

The Court concludes the arbitration agreement's cost-splitting arrangement is not unconscionable. It should be obvious that "attorney's fees are not unique to arbitration." *Woodmen*, 479 F.3d at 567 (quoting *Faber*, 367 F.3d at 1054). "Thus, the fact that a party will incur litigation costs and attorney's fees in an arbitral forum does not make that forum unconscionable; she would generally face those fees regardless of the forum." *Id.* (citing *Faber*, 367 F.3d at 1054). Just as in *Faber*, Plaintiff has not provided the necessary evidence to the Court to estimate the length of time necessary to complete arbitration or an estimate of arbitrators' fees. *Cf. Faber*, 367 F.3d at 1054. Accordingly, pursuant to Local Rule 7.1(b), the Court will disregard Plaintiff's allegation that arbitration may cost $50,000[6] and his statements concerning his annual income because he has not submitted any supporting affidavits or other documents nor does the record establish such information. W.D. Mich. LCivR 7.1(b). Thus, Plaintiff's hypothetical inability to pay fails to meet the burden of overcoming the federal policy favoring arbitration.

---

[6]"The arbitration procedure invoked by Ferrelgas [sic] could conceivably cost [Plaintiff] the equal of a years [sic] salary." (Pl.'s Resp. 11.)

The Court will, however, indulge Plaintiff's argument and alternatively demonstrate why it fails. Plaintiff has admitted he "presently works for a *modest* salary of $50,000 per year." (Pl.'s Resp. 1 (emphasis added).) This salary is sufficient to pay applicable arbitration fees. Because an annual income of $50,000 roughly equals the fiftieth percentile of all American wage-earners, Plaintiff is essentially asking the Court to conclude that arbitration provisions, such as the one contained in the Employee Agreement, cannot be enforced against at least fifty percent of the population of the United States.[7] Although this statistic, by itself, is nondispositive, it is quite telling as to the frivolousness of Plaintiff's argument. The risk that Plaintiff "will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Morrison*, 317 F.3d at 659. To invalidate the arbitration agreement on this basis would undermine the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. Therefore, the Court finds that the arbitration agreement's cost-splitting procedures are not prohibitive nor unconscionable.

**D. Relief**

Upon finding the arbitration agreement to be valid and enforceable, the Court must determine whether the Compliant should be dismissed or arbitration should be compelled. The FAA directs the Court to stay an action pending arbitration;[8] however, the Court's ability to dismiss a case is not

---

[7]The United States Census Bureau's most recent publication detailing income dispersion states that the median wage-earner, which represents the fiftieth percentile of American workers, made $48,201 in 2006. *See* U.S. Census Bureau, *Income, Poverty, and Health Insurance Coverage in the United States: 2006* Table A-3 (2007). Additionally, Plaintiff lives in an area of the country with a notably low standard-of-living.

[8]Upon a determination that a valid arbitration agreement exists and that a particular dispute falls within the terms of that agreement, the Court must "direct[] the parties to proceed to

limited when all issues raised in the complaint are arbitrable. *See, e.g., Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (concluding "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citation omitted); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 & n.21 (1st Cir. 1998); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Gassner v. Jay Wolfe Toyota*, No. 4:06-CV-1335 CAS, 2007 WL 1452240, at *3 (E.D. Mo. May 15, 2007) ("Where all issues in a case must be submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action."). Based on applicable caselaw, the Court concludes that dismissal of Plaintiff's Complaint is the appropriate remedy because all of Plaintiff's claims are arbitrable. The Court can discern no purpose for retaining jurisdiction and staying the action.

### E. Attorney Fees

Both parties have requested attorney fees and costs associated with Defendant's Motion to Dismiss or Compel Arbitration. Defendant asserts it should not have had to bring such a motion when Plaintiff's claims are clearly encompassed by the arbitration agreement. Plaintiff counters that for the reasons stated above, Defendant's Motion is frivolous, lacks legal sufficiency, and, therefore, Plaintiff's attorney fees have been wrongfully incurred. Neither party has cited authority for awarding attorney fees and costs. Attorney fees generally are not awarded to the prevailing party

---

arbitration in accordance with the terms of the agreement." *See* 9 U.S.C. § 4.

unless there is explicit authorization "from a statute," or the losing party has exhibited "bad faith, wanton or vexatious conduct." *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–60 (1975); *Jaquette v. Black Hawk County, Iowa*, 710 F.2d 455, 462 (8th Cir. 1983). The FAA does not contain any provisions providing attorney fees to prevailing parties. *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994).

Plaintiff's attorney fees request is unmeritorious in light of the Court's finding that Defendant's arguments all have substantial merit. The Court understands Defendant's frustration for being forced to file a Motion to Dismiss or Compel Arbitration given that Plaintiff—on his own free will—entered into the arbitration agreement with Defendant. Plaintiff's refusal to arbitrate his claims teeters on the brink of frivolousness and wastes not only the time of defense counsel, but also valuable judicial resources. Plaintiff has thrown into the hodgepodge almost every argument known to the Court for invalidation of an arbitration agreement.[9] To reasonable attorneys, it should have been obvious most of these arguments presented no tenable issue. Nevertheless, attorney fees are

---

[9]Plaintiff's briefing is saddled with what appears to be form language, which perhaps explains why so many untenable issues have been raised. Although such a practice may save Plaintiff's attorney time and allow him to mass-produce filings for clients seeking to invalidate an arbitration agreement, defense attorneys and the Court do not share the same luxury. The Court's assessment of Plaintiff's attorney's legal tactics is further supported by the citations to Michigan law even though Missouri law controls this dispute, as well as the page-numbering in Plaintiff's Response, which on some pages is hand-written while on other pages is properly typed in. This suggests to the Court Plaintiff's attorney merely inserted pages relating to the case at bar into an otherwise "form" response, and thereafter scanned it into a PDF document and submitted it to the Court. In the future, the Court hopes litigants will abide by arbitration agreements that do not contain genuine issues of fact or law, instead of bringing spurious matters before an already overburdened court system. It seems apparent that such a practice is not only beneficial to courts, defense attorneys, and plaintiff's attorneys, but also to clients.

not advisable in this instance.[10] Therefore, Defendant's request for attorney fees and costs will be denied. This holding does not seek to prevent Defendant from recovering attorney fees in arbitration, if such fees are available.

**IV. CONCLUSION**

For the reasons given, the Court declines to retain jurisdiction and compel arbitration. A Judgment shall issue granting Defendant Ferrellgas, Inc.'s Motion to Dismiss. Each party shall be responsible for their own attorney fees and costs.

|  |  |
|---|---|
|  | /s/ Richard Alan Enslen |
| DATED in Kalamazoo, MI: | RICHARD ALAN ENSLEN |
| February 8, 2008 | SENIOR UNITED STATES DISTRICT JUDGE |

---

[10]Defendant has not pursued the appropriate course of action for the Court to sanction Plaintiff. *See* Fed. R. Civ. P. 11(c)(1)(A). Accordingly, sanctions will not be awarded under Rule 11. In so holding, the Court recognizes its authority under Rule 11(c)(1)(B), but determines not to exercise that authority in this instance. *See Two Men & a Truck/Int'l Inc. v. Two Men & a Truck/Kalamazoo, Inc.*, No. 5:94-CV-162, 1996 WL 740540, at *2–3 (W.D. Mich. Oct. 16, 1996).